UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARION DOYLE and MICHAEL DOYLE<br><br>　　Plaintiffs,<br><br>　　　　v.<br><br>FALMOUTH POLICE DEPARTMENT, et al.,<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:14-cv-259-JDL<br>)<br>)<br>)<br>)<br>) |

### ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiffs Michael and Marion Doyle (collectively, "the Doyles") have sued the Falmouth Police Department, the Town of Falmouth, and two Falmouth Police officials, Officer Robert Ryder and Lieutenant John Kilbride, alleging various constitutional violations under 42 U.S.C.A. § 1983 (2014). The case arises out of a traffic stop and the subsequent issuance of a summons for evasion of vehicle registration and excise taxes, which the Doyles contend violated their Fourth, Fifth, and Fourteenth Amendment rights. Defendants have moved to dismiss the Doyles' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A hearing on the motion was held on January 21, 2015. For the reasons set forth below, the defendants' motion is granted as to plaintiff Michael Doyle.[1]

---

[1] According to a submission from Michael Doyle, Marion Doyle passed away on January 12, 2015. ECF No. 27. Her death was noted on the record at the hearing on January 21. Because a substitution of

1

## II. FACTUAL BACKGROUND

When considering a Rule 12(b)(6) motion, I assume the truth of all well-pleaded facts in the plaintiffs' complaint, and draw all reasonable inferences in the plaintiffs' favor. *See Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011). I "stop short, however, of swallowing the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions . . . and the like need not be credited." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) (internal quotations and citations omitted).

Viewed through this lens, the facts, for the purpose of this motion, are as follows:

On November 22, 2012, Officer Robert Ryder of the Falmouth Police Department pulled Michael Doyle over as he drove on Johnson Road in Falmouth. ECF No. 1 at 3.[2] This traffic stop did not result in the issuance of a citation or summons to Michael. *Id.* at 4. However, Officer Ryder informed Michael that he would be issuing a summons to Michael's mother, Marion Doyle, because the vehicle was not registered in Maine. *Id.* Officer Ryder then proceeded to Michael and Marion's Falmouth residence, where he issued Marion a summons for evasion of vehicle registration fees and excise taxes. *Id.*

Prior to the November 22 stop, Officer Ryder had e-mailed the New Hampshire Department of Motor Vehicles ("DMV") regarding the registration of the vehicle in

---

Marion as a party pursuant to Federal Rule of Civil Procedure 25 has not been effected, I decline to act on defendants' motion as it relates to her.

[2] While the Doyles' complaint does not specifically name Officer Ryder as the officer who conducted the traffic stop, it is clear from the plaintiffs' narrative that he was.

question. ECF No. 15-3 at 1. In his e-mail, dated November 5, Officer Ryder mentioned that he had seen Michael driving the vehicle around Falmouth and became suspicious of its New Hampshire plates because he knew Michael to be a Falmouth resident. *Id.* Officer Ryder told the New Hampshire DMV that he had "a $911.00 summons waiting for Michael Doyle" and described Michael as "a convicted felony [sic] . . . not on the up and up." *Id.*

The Doyles believe that the traffic stop and the summons were motivated by animosity the Falmouth Police Department and its officers have towards them. According to the Doyles, Officer Ryder conducted the traffic stop so that he could "brag" to Michael that he would be giving Marion a summons. ECF No. 1 at 13. The Doyles believe that Officer Ryder then issued the summons "in an attempt to seek revenge" against Michael, ECF No. 1 at 4, and "in order [sic] disrupt and ruin" the holidays for Marion, ECF No. 15 at 5. The Doyles assert that this animosity began when Michael complained about Officer Ryder's handling of an incident when Michael was a candidate for office and his campaign signs had been stolen or vandalized. ECF No. 1 at 4. Michael believes that Officer Ryder refused to investigate his complaint, after which Michael told Officer Ryder "to do his job or quit." ECF No. 15 at 2.

A hearing on the summons issued to Marion was held in the Maine District Court in Portland on May 28, 2013. ECF No. 15-4 at 1. Judge Jeffrey Moskowitz ultimately found that Marion had not committed the violation. *Id.*

## III. DISCUSSION

A. **Plaintiffs' Operative Complaint**

Before reaching the merits of the Motion to Dismiss the Amended Complaint, there is the threshold matter of determining which of the Doyles' claims are actually before the Court. Specifically at issue is whether the Doyles' Amended Complaint (ECF No. 16), which pleads only a count of malicious prosecution, incorporates the other counts plead in the original Complaint (ECF No. 1). The Defendants contend that the Amended Complaint failed to sufficiently incorporate the claims made in the initial Complaint, so that the former entirely superseded the latter and only the count of malicious prosecution survives. ECF No. 18 at 3-5.

Typically, an amended complaint replaces an original complaint in its entirety, and claims that appear only in the original are treated as abandoned. *See Kolling v. American Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003). However, a pleading may adopt by reference statements that appear in other pleadings. Fed. R. Civ. P. 10(c). A plaintiff who wishes to incorporate an original complaint into an amended complaint in this manner is required "to plead the claim with sufficient specificity" to make a defendant aware that an additional claim has been asserted. *Kolling*, 347 F.3d at 17.

Against this backdrop, the Federal Rules of Civil Procedure require that pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e). While unrepresented litigants "are not exempt from procedural rules, [the court holds] pro se pleadings to less demanding standards than those drafted by lawyers and endeavors, within reasonable limits, to guard against the loss of pro se claims due to technical defects."

4

*Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* complaints are to be "liberally construed") (internal quotations and citations omitted).

The Doyles' Amended Complaint purports to "Amend[ ] the Complaint . . . to include malicious prosecution under U.S. 42 USCA Section 1983." ECF No. 15 at 1. Given a liberal construction, this language was sufficient to put Defendants on notice that the Doyles were bringing a malicious prosecution claim in addition to the claims advanced in their original Complaint. Accordingly, the Doyles' Amended Complaint is fairly read as incorporating by reference the original Complaint and, by extension, the claims it asserted.[3]

**B.     Defendants' Motion to Dismiss**

A party may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion, a plaintiff's pleadings must incorporate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). Accordingly, a plaintiff must plead sufficient, non-conclusory facts to "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial

---

[3] As there are two complaints in this case, there are also two motions to dismiss – one directed to the Amended Complaint (ECF No. 18) and the other to the original (ECF No. 14). Because the original Complaint is no longer operative, the Motion to Dismiss (ECF No. 14) is moot. However, I still address the arguments raised in that motion in consideration of the Motion to Dismiss the Amended Complaint. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2014) ("[d]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.")

5

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1.  **Claims Against the Falmouth Police Department**

Michael has asserted four separate claims against the Falmouth Police Department. ECF No. 1 at 7-13; ECF No. 15 at 1. However, a town's police department is not a separate entity from the town itself, and is therefore not a proper party to a suit. *See Cambron v. Brewer Police Dept.*, 2013 WL 6229376, *2 (D. Me. Dec. 2, 2013) ("To the extent [a plaintiff] wishes to name as a party defendant the [ ] Police Department, which is simply one part of the City [ ], such a department of a governmental entity is not an entity with the legal capacity to sue or be sued, and should be dismissed from the case for that reason."); *Freeman v. Town of Hudson*, 849 F. Supp. 2d 138, 146 (D. Mass. 2012), *aff'd*, 714 F.3d 29 (1st Cir. 2013). Michael's claims against the Falmouth Police Department must therefore be dismissed.

2.  **Claims Against the Town of Falmouth[4]**

Michael has also brought four § 1983 claims against the Town of Falmouth. ECF No. 1 at 7-13; ECF No. 15 at 1. While municipalities may be liable under § 1983, they are responsible only for their own unconstitutional acts. *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011). They are not vicariously liable for the actions of their non-policymaking employees. *Id.* Accordingly, Michael's effort to proceed against the

---

[4] The original complaint asserts claims against the Town of Falmouth, while the Amended Complaint adds the Inhabitants of the Town of Falmouth as defendants. I treat both of these claims as pleaded against the same party.

6

Town of Falmouth under a theory of vicarious liability, *see* ECF No. 1 at 9, 12, 15, must fail. This conclusion does not, however, entirely dispose of Michael's claims against the Town of Falmouth. It remains possible to state a legally sufficient claim against a municipality under § 1983 if a plaintiff "identif[ies] a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Haley*, 657 F.3d at 51 (citing *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)) (emphasis in original). After identifying such a policy or custom, the plaintiff must also show culpability and causation by demonstrating that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original).

The pleadings are devoid of factual allegations that would support such a claim. Excluding from consideration all allegations that are conclusory and all those that cannot be reasonably inferred to speak to the actions of the Town of Falmouth as an entity, the pleadings against the Town allege as follows: the Town "took steps to secure a trial and prosecution" of the summons for evasion of registration, ECF No. 1 at 5; the Town withheld exculpatory information related to the summons from the plaintiffs, *id*. at 6; and the Town pursued the summons "as a method to abuse both Plaintiffs . . . for calling out Ryder's poor work ethic," ECF No. 15 at 4. These allegations are not sufficient to state a claim for municipal liability, because they fail to point to a municipal policy or custom that caused Michael injury. *See Haley*, 657 F.3d at 51. In particular, allegations that the Town, acting through named individuals, withheld exculpatory information in this case fail to identify a policy or

custom that could trigger municipal liability. *See id.*; *see also*, *Freeman*, 714 F.3d at 38 (observing that "[t]he complaint alleges misconduct from many separate actors, but gives no guidance about which acts are properly attributable to the municipal authority.").

Even if the factual allegations recited above might be taken to identify the Town's practice of forwarding a summons issued by the Falmouth Police Department to the Cumberland County District Attorney's office as a "policy" at issue, the pleadings would still fail to identify how such a seemingly neutral bureaucratic process worked to deliberately deprive Michael of his constitutional rights. *See Brown,* 520 U.S. at 407 ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.").

Because the pleadings do not contain sufficient factual material to state a municipal liability claim against the Town of Falmouth, they fail to state a § 1983 claim against the Town.

### 3. Claims Against Officer Robert Ryder

Michael has asserted three separate § 1983 claims against Officer Ryder: that he violated Michael's Fourth Amendment rights by pulling Michael over, that he violated Michael's Fifth and Fourteenth Amendment due process rights by conducting the traffic stop, and that the traffic stop and issuance of the summons constituted malicious prosecution. ECF No. 1 at 10, 13; ECF No. 15 at 1. For each of these claims, three elements are required for liability: deprivation of a right, state

8

action, and a causal connection between the actor and the deprivation. *See* 42 U.S.C.A. § 1983; *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). I analyze each of these claims in turn.

### i. Fourth Amendment

The Fourth Amendment affords the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes and must be supported by a reasonable, articulable suspicion of criminal activity to be constitutionally valid. *See, e.g., U.S. v. Chhien*, 266 F.3d 1, 5-6 (1st Cir. 2001). The reasonable suspicion standard is a lower bar than probable cause, but "requires more than a naked hunch." *Id.* at 6. Ascertaining whether a reasonable suspicion exists requires considering all of the circumstances and making "a practical, commonsense judgment." *Id.*

Viewing the facts in the light most favorable to Michael, the following is specifically alleged about the traffic stop conducted by Officer Ryder: Officer Ryder bore animus toward Michael based on their personal history, ECF No. 15 at 1, and prior to the traffic stop, Officer Ryder had contacted the New Hampshire DMV regarding the registration of a vehicle he had seen Michael driving. ECF No. 15-3 at 1. Officer Ryder was suspicious because the vehicle had New Hampshire plates and he knew Michael did not live or work in New Hampshire. *Id.* In his e-mail, Officer Ryder referred to Michael somewhat negatively and noted that he had already prepared a summons for Michael in the event the New Hampshire DMV could not provide exculpatory information. *Id.* When Officer Ryder stopped Michael on

9

November 22, Michael was not speeding. ECF No. 1 at 3. Officer Ryder did not ask for Michael's registration upon making the stop. *Id*. at 3-4. He declined to ticket or cite Michael, but mentioned that he would be issuing a summons to Marion. *Id*.

These facts cannot support a finding that Officer Ryder lacked a reasonable suspicion for the traffic stop. Rather, they do the opposite – they show that Officer Ryder had developed a well-founded suspicion about the registration status of Michael's vehicle in the weeks prior to the stop. Knowing that a Maine resident regularly drives a non-commercial vehicle registered in another state provides more than a hunch that the vehicle may be improperly registered. Moreover, Michael does not allege any facts that contradict his in-state residency or the vehicle's out of state registration as observed by Officer Ryder.

Importantly, Michael's allegations about the animosity between him and Officer Ryder do nothing to undermine the reasonableness of the suspicion held by Officer Ryder. *See Whren v. U.S.*, 517 U.S. 806, 813 (1996) (foreclosing "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."). It is an inevitability of small town life that officers will become acquainted with residents, and the development of actual or perceived hostility between an officer and a resident does not preclude the officer from conducting lawful police work. Because Michael's allegations cannot establish that Officer Ryder lacked a reasonable suspicion for the traffic stop, his Fourth Amendment claim against Officer Ryder must be dismissed.

### ii. Fifth and Fourteenth Amendments

Michael further contends that Officer Ryder's traffic stop deprived him of liberty without due process of law in violation of the Fifth and Fourteenth Amendments. ECF No. 1 at 14. As the protections of the Fifth Amendment Due Process Clause do not apply to the actions of state or local governments, *see Martínez-Rivera v. Sánchez Ramos*, 498 F.3d 3, 8-9 (1st Cir. 2007), Michael's Fifth Amendment claim must be dismissed. Michael does not specify the contours of his Fourteenth Amendment claim, and so I treat it as asserting violations of his substantive and procedural due process rights.

To establish a procedural due process violation, a plaintiff must show that they were deprived of a protected liberty or property interest and that the attendant procedures available to them did not constitute due process. *See, e.g.*, *García-González v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014). Certain brief deprivations of protected interests do not merit any prior process. *See Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) ("There are deprivations so limited that no prior 'process' is due, e.g., a *Terry* stop."); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (noting that the usual traffic stop is analogous to a *Terry* stop). Therefore, to the extent Michael wishes to bring a procedural due process claim, he must allege deficiencies in the process afforded to him after the alleged deprivation.

Even assuming that Michael has sufficiently alleged a deprivation of liberty, his pleadings are entirely silent about any post-deprivation process available to him, or its inadequacy. *See* ECF No. 1; ECF No. 15. Michael's procedural due process

11

allegations therefore fail to state a claim upon which relief can be granted, and are properly dismissed.

As for a substantive due process claim, where a particular Amendment provides an explicit textual source for a right, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, because the Fourth Amendment protects against seizures of the person, a § 1983 claim for pretrial deprivation of liberty is properly analyzed under the framework of the Fourth Amendment, rather than substantive due process. *See Albright*, 510 U.S. at 273-74; *Bailey v. McCarthy*, 2002 WL 91886, *8 n.7 (D. Me. Jan. 25, 2002). Michael's substantive due process claim must be dismissed.

### iii. Malicious Prosecution

Finally, Michael asserts that the traffic stop and summons constituted malicious prosecution actionable under § 1983. Section 1983 does not support "garden-variety" malicious prosecution claims. *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996). Rather, a plaintiff must establish the elements of malicious prosecution under state law *and* also show the deprivation of a constitutionally protected right. *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). Substantive due process cannot supply the protected right in this area, and neither can procedural due process if an adequate malicious prosecution remedy exists under

state law. *Roche*, 81 F.3d at 256. Maine recognizes a cause of action for malicious prosecution. *See, e.g.*, *Trask v. Devlin*, 2002 ME 10, ¶ 11, 788 A.2d 179.

With due process avenues thus foreclosed, the only constitutional deprivation alleged in the pleadings that may support a malicious prosecution claim is the allegation that "Plaintiffs [were] subjected, to deprivation of their rights, under the Fourth Amendment." ECF No. 1 at 8. As discussed at length above, Michael has not alleged sufficient facts to make out a claim that his Fourth Amendment rights were violated. Moreover, a malicious prosecution cause of action under Maine law only lies if the defendant initiated a *criminal* action against the plaintiff. *Trask,* 2002 ME 10, ¶ 11, 788 A.2d 179. Here, the prosecution in question under 29-A M.R.S. § 514 (2012) was for a civil traffic infraction, which is not a criminal offense. 29-A M.R.S. §§ 103, 514 (2014); ECF No. 15-4. Accordingly, the pleadings do not assert facts that would support a § 1983 claim based on malicious prosecution, and the claim should be dismissed.

### 4. Claims Against Lieutenant John Kilbride

The same claims that Michael asserts against Officer Ryder are also offered against Lieutenant John Kilbride. The non-conclusory factual allegations made with respect to Lieutenant Kilbride are that: Lieutenant Kilbride "had ample time to mitigate [his] damages," ECF No. 15 at 4; he requested a continuance of the hearing on the summons due to Officer Ryder's unavailability, *id.*, he "should have established that Plaintiff was not the 'second owner' of the vehicle but only the loan guarantor," *id.*; he "endorsed" Officer Ryder's summons, *id.* at 5; and he "took steps to secure a trial and prosecution" of the summons issued to Marion. ECF No. 1 at 5.

These allegations do not support any of the claims asserted against Lieutenant Kilbride. Michael's Fourth Amendment claim requires allegations showing an unreasonable seizure, and his Fourteenth Amendment claim requires allegations showing deprivation of a protected liberty interest without due process. *See supra.* A successful malicious prosecution claim, as Michael has plead it, also requires allegations showing a Fourth Amendment violation. *Id.* However, the factual allegations about Lieutenant Kilbride fail to suggest that an unreasonable seizure or a deprivation of liberty occurred as a result of his actions. At most, the allegations show that Lieutenant Kilbride acted in a supervisory capacity with respect to Marion's summons, passing it on to the appropriate authorities and coordinating Officer Ryder's appearance at the state court hearing. If proven, these allegations do not support any of the causes of action that Michael has identified. Accordingly, Michael's claims against Lieutenant Kilbride are dismissed.

## IV. CONCLUSION

It is apparent that the events that transpired between the Doyles and Falmouth officials have left Michael feeling aggrieved. But these events, as pleaded, do not support his claims of constitutional violations. After careful consideration, I conclude that the defendants' Motion to Dismiss the Amended Complaint should be **GRANTED** with respect to plaintiff Michael Doyle's claims.

**SO ORDERED.**

Dated: February 4, 2015          /s/ Jon D. Levy
                                 U.S. District Judge